## Carrier's Appeal.

1. A trustee's compensation is not to be fixed by any inflexible rule; but depends on the circumstances of each case.

2. For the sale of real estate 2½ per cent. has generally been regarded as proper compensation.

3. Heirs on whom real estate descended were all *sui juris* and made a contract for its sale. A trustee under his own advice was appointed by the Orphans' Court, under the Act of April 18th 1853, to make a private sale according to the contract, merely to pass the title. The trustee claimed 5 per cent. commissions on $37,740. The Supreme Court fixed this compensation at $500.

4. A trustee who vexes the heirs and delays distribution by an exorbitant claim for commissions, is not entitled to the same compensation as one who makes a reasonable claim.

5. Part of the fund was payable at the death of a widow who was to receive the interest during life. The trustee to sell was appointed by the court below, trustee to hold the fund, upon giving new security. *Held*, that although under the facts a more judicious selection might have been made, the Supreme Court would not interfere.

October 5th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Allegheny county:* Of October and November Term 1874, No. 247.

In the account of Isaac Jones, trustee to sell the real estate of A. A. Carrier, late of the city of Pittsburg, deceased. About the 2d of November 1869, A. A. Carrier died intestate and without issue, but leaving a widow, Elizabeth M. Carrier, also his mother, Electra Carrier; two brothers, Simon S. Carrier and Francis L. Carrier, and a sister, Ariadne Carrier, and seised of a messuage and lot of ground in Pittsburg which was subject to a mortgage for $12,500 to the Connecticut Mutual Life Insurance Company.

Upon the petition of the above-named widow, mother, sister and brothers, all of whom were *sui juris*, and also of the mortgagees,

the court appointed Isaac Jones trustee to sell the above-mentioned real estate at public or private sale, under the Act of April 18th 1853 (Price Act), Pamph. L. 503, 2 Br. Purd. 1242. Jones entered into bonds with sureties in the sum of $70,000, conditioned for the faithful execution of the trust, and the proper application of the moneys received, according to the decree of the court. The real estate was sold to Hamilton McClintock for $35,000; to be paid, $13,000 in cash and the remainder in two equal annual payments. On the 2d of May 1871, when the cash payment was made, the trustee, by draft, paid the mortgagees $13,043, in full of the amount due on the mortgage. On the 7th of March 1873, the trustee having then received the first two instalments of the purchase-money, on petition of some of the heirs, a citation was issued to him to settle an account of his trust. He answered to the citation that the last instalment would be due on the 2d of the following May, and upon its payment " he will be able to file his account after adjusting certain claims against the estate." On hearing the petition and answer the court ordered the trustee to file his account on or before the 19th of April.

He accordingly filed his account, in which he charged himself with $37,740.19, the whole purchase-money and interest; the last instalment having been received after filing his answer.

He credited himself with the payment of the mortgage which had been paid before the citation; but not with the payment of any other claim against the estate; also, with attorney's fees $100 and "five per cent. commission" $1887.01, and with several small items of ordinary expenses. The heirs filed exceptions to the charge for commissions.

W. G. Hawkins, Esq., was appointed auditor " to report on the exceptions and to report distribution." He reported that the negotiations preliminary to the sale had been conducted by S. S. Carrier, one of the distributees; the purchaser was introduced to the trustee after the terms, which were those on which the real estate was sold by the trustees, had been agreed upon, and an agreement was entered into between all the parties and the purchaser, Mr. Jones representing the widow, who was his daughter. The deferred payments as paid to the trustees were deposited in a savings bank at interest.

The heirs also, by writing, directed Mr. Jones to pay two debts of the estate, one to himself and the other to the widow of decedent. Under a power of attorney, dated April 13th 1871, executed by the mother, brothers and sister of the decedent, and recorded, S. S. Carrier, one of the brothers, residing in Pittsburg, was authorized to receive and receipt for all money payable to them from the estate of the decedent; to appear and act for them in all matters relating to the real estate of the decedent, to execute all necessary writings with their seals, &c. The trustee was duly

notified of this power of attorney. Subsequently to the payment of the second instalment, the attorney-at-law of the heirs frequently called on the trustee for the payment of their portion of the money, informing him that they were in want, and that unless payment were made, legal measures would be resorted to. It was after his persistent refusals to pay that the citation was issued.

The auditor further reported that the work done by the trustee embraced some five or six acts, entirely formal in their character and done in his office; that S. S. Carrier took an active part and did much which the trustee would otherwise have had to do. The proceedings for the sale of the land were suggested and insisted upon by the trustee; they were entirely unnecessary; the parties having been amicably disposed and *sui juris*, were competent to make a sale without the aid of the court.

The auditor as to the distribution reported as his opinion, that Mr. Jones was appointed only to make sale; that when that was done the duties of the trust were ended, and the proceeds of sale were then to be paid over according to the order of the court; the trustee to sell the land was not, as such, entitled to hold the half of the fund of which the widow of the decedent was to receive the interest during life, but that a trustee should be appointed for that specific purpose, and that the other half should be paid to S. S. Carrier, as attorney in fact for the other parties in interest.

The auditor decided:—

1. That the commission charged by the trustee should be reduced to the sum of $500, and that the balance shown in his account be increased $1387.01, being the difference between commissions allowed and those credited; which with the accrued interest (interest to July 10th 1873) will make the balance in the hands of Isaac Jones, trustee aforesaid, $27,052.07.

2. That one-half of the balance, less costs of this audit, in the hands of said trustee, Isaac Jones, should be paid to S. S. Carrier in his own right, and as attorney in fact for Mrs. Electra Carrier, Francis L. Carrier and Ariadne Carrier.

3. That a trustee should be appointed, who upon giving adequate security, to be approved by the court, should have and hold the remaining one-half of said balance; the income whereof to be paid to said Mrs Elizabeth Carrier during her natural life, and at her death the corpus of said fund be paid to the said S. S. Carrier, Francis L. Carrier and Ariadne Carrier, or their representatives respectively; and

4. That the costs of this audit be paid out of the fund in the hands of Isaac Jones, trustee.

Jones filed exceptions to the report of the auditor:—

1. That he reduced the compensation of the trustee to $500, whereas he should have allowed him three per cent. on the proceeds of sale.

[Carrier's Appeal.]

2. That he directed one-half of the balance to be paid to S. S. Carrier for himself and as attorney in fact for his mother, brother and sister.

3. That he directed that a trustee should be appointed to hold the other half of the fund and pay the income to the widow during life, and at her death to pay it to the other heirs.

The mother and other heirs excepted to the report, that the auditor should not have allowed the trustee any commissions, and should have charged him with the expenses of the audit.

After hearing the exceptions, the Orphans' Court decreed:—

1. That the compensation of the trustee be fixed at $1000, and that the costs, including auditor's fee of $200, be paid by the trustee out of the fund in his hands.

2. That one-half of the remaining fund (or so much thereof as has not already been paid), with the accrued interest thereon, be paid to S. S. Carrier, in his own right and as attorney in fact for Mrs. Electra Carrier, Francis L. Carrier and Ariadne Carrier.

3. That the remaining half of said fund be securely invested by a trustee, to be appointed for that purpose, and the interest arising therefrom be by him paid semi-annually to Mrs. Elizabeth M. Carrier, widow of intestate, during her life, and at her decease the principal to be paid to those entitled thereto.

4. That Isaac Jones be and he is hereby appointed trustee to take charge of the said last-mentioned fund, invest the same, and pay the interest thereof semi-annually as aforesaid, during the lifetime of said Elizabeth M. Carrier; and it is ordered that the said trustee give bond in double the amount of the fund to be invested, with security to be approved by the court, conditioned for the faithful disaharge of his duties as such trustee.

The Carriers appealed to the Supreme Court, and assigned for error :—

1–6. Not sustaining their exceptions.

7. That part of the decree contained in the fourth clause of the decree.

*W. S. Purviance*, with whom was *S. A. Purviance*, for appellants.—Compensation only, is what is allowed to trustees: Harland's account, 5 Rawle 330; Heckert's Appeal, 12 Harris 486; Stehman's Appeal, 5 Barr 417.   An unfaithful trustee will not be allowed any compensation: Greenfield's Estate, 12 Harris 238; Stearly's Appeal, 2 Wright 530.

*M. W. Acheson* (with whom was *E. B. Todd*), for appellee.—A trustee should receive a compensation adequate to his care and trouble, besides a liberal allowance for necessary expenses: Scott's Intestate Law 552.   The receipt and disbursement of money are susceptible of a uniform measure which may reasonably be fixed at two and a half per cent. : Stevenson's Appeal, 4 Wharton 104;

Wheelen's Appeal, 20 P. F. Smith 410. As to the rate of compensation, they cited: Pusey *v.* Clemson, 9 S. & R. 204; Walker's Estate, Id. 223; Snyder's Appeal, 4 P. F. Smith 69; Robb's Appeal, 5 Wright 49; Lukens' Appeal, 11 Wright 356.

Mr. Justice PAXSON delivered the opinion of the court, October 12th 1875.

This is a question of commissions. The trustee charges $1187.01, being five per cent. upon the sale of the real estate. The heirs refused to allow this sum, alleging that it was exorbitant, and the trustee refusing to settle with them upon any other basis, an auditor to make distribution was appointed, who reduced his compensation to $500. To this report exceptions were filed, and the Orphans' Court sustained the exceptions to the extent of allowing the trustee the sum of $1000; this order of the Orphans' Court was assigned for error.

In any view of the case the charge of the trustee is excessive. While the question of the compensation of trustees is not to be determined by any inflexible rule, but must depend, to a great extent, upon the circumstances of each particular case, yet two and a half per cent. has generally been regarded as a proper compensation for the sale of real estate. Had this trustee been satisfied with this sum, it is quite possible the heirs would have acquiesced in it, and thus have avoided the delay and expense of this litigation. As the parties have appealed to the law they must take what the law gives them.

The case itself is exceptional. The parties owning the real estate appear to have had full dominion over it, and were all *sui juris.* They could have made a deed for the property without the aid of a trustee or the court: that they did not do so was in part due to the advice of the trustee himself. In fixing the compensation of the latter, regard must be had to the fact that the application to the court was solely with a view of passing the title; that the duties of the trustee were more formal than real, and that the sale was in reality made by the heirs. It is true he received the money and is charged with its proper distribution, but even this, under the circumstances, involves no considerable amount of trouble. But for this question of commissions the proceeds of sale could have been probably paid over to the parties entitled thereto.

A trustee who vexes the heirs and delays distribution by preferring an exorbitant claim for commissions, is not entitled to the same consideration as one who makes a reasonable claim for his services. In the latter case, if the parties in interest contest his charge, they have no one but themselves to blame for the delay incident thereto. Under all the circumstances of this case, we think the sum allowed by the auditor ($500) as compensation to the trustee was sufficient; the costs were rightly disposed of.

[Carrier's Appeal.]

We perceive no error in the seventh specification. Under all the facts a more judicious selection of a trustee might, perhaps, have been made by the Orphans' Court, but the reasons assigned are not sufficient to justify our interference.

> The decree of the Orphans' Court is reversed and set aside as to the allowance of commissions or compensation to the trustee, and the report of the auditor is confirmed as to the commissions and costs; the costs of this appeal to be paid by the appellee.